***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stephenson. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS 1. All parties are properly before the Commission. *Page 2 
2. All parties have been correctly designated, and there is no question as to mis-joinder or non-joinder of parties. The Commission has jurisdiction of the parties and of the subject matter.
3. The employer was self-insured and Key Risk Management Services is the servicing agent.
4. The parties were subject to the North Carolina Workers' Compensation Act at the time of the injury, the employer employing the requisite number of employees to be bound under the provisions of the Act.
5. An employer/employee relationship existed at the time of the injury.
6. The date of injury was November 1, 1993.
7. Plaintiff's average weekly wage at the time of the injury was $815.00, which yields the maximum compensation rate of $442.00 for that year.
8. The injury was accepted as compensable under the Workers' Compensation Act in a Form 21 dated November 30, 1993, and approved by the Commission on December 16, 1993. Through the date of hearing before the Deputy Commissioner, plaintiff continued to be paid total disability compensation, paid under a Form 26, approved by the Commission on March 8, 1995.
 ***********
Based upon the credible evidence of record and reasonable inferences drawn therefrom, the Full Commission finds as fact the following:
 FINDINGS OF FACT *Page 3 
1. Plaintiff sustained a compensable injury by accident on November 1, 1993, and had described a deterioration of his condition, both mental and physical, during the years he was having multiple back surgeries after the injury. Plaintiff felt that psychological counseling would benefit him. Plaintiff previously sought counseling with psychologist Dr. Cutting in mid-1997, and had seen a psychiatrist, Dr. Schroeder, for several years as well.
2. On July 8, 1999, plaintiff filed a "Motion for Order Requiring Reasonable Medical Treatment," namely, evaluation at the pain clinic at NC Baptist Hospital. By order of March 20, 2000, former Deputy Commissioner Ed Garner referred the case to the Nurse's Section of the Industrial Commission to obtain the recommendation of NCIC Nurse Judy Clouse. Nurse Clouse was of the opinion that the plaintiff should be seen at NC Baptist Hospital.
3. Defendants ultimately refused to provide psychological treatment to plaintiff, asserting that plaintiff's mental problems were not the result of his injury.
4. Both plaintiff and his wife testified that before his back injury, plaintiff had not needed any psychological treatment and had not ever been out of work for emotional issues. Plaintiff's wife stated that the big change in plaintiff's mental disposition occurred between plaintiff's fourth and fifth surgeries following the injury by accident — plaintiff's activity slowed, he began to isolate himself, and had much less tolerance for noise and children. She testified that when doctors told plaintiff that he would not be able to return to work, his mental condition took a nosedive. The Full Commission finds that testimony of plaintiff and his wife to be credible.
5. Dr. D. Scott Cutting, a clinical psychologist, treated plaintiff in June and July 2002. Dr. Cutting testified that plaintiff's *Page 4 
depression was directly related to his back injury and his subsequent surgeries. He stated that plaintiff's injury was a main causal factor in plaintiff's depression, and that plaintiff required counseling for his depression. Dr. Cutting administered an MMPI-2 personality profile test, which provided a profile that is typical of chronic pain patients.
6. Dr. Schroeder is a psychiatrist and treated plaintiff for over four years. Dr. Schroeder was of the opinion that plaintiff needed psychological treatment, and that plaintiff's mental condition was attributed to the compensable injury. Dr. Schroeder diagnosed plaintiff with major depression. He testified that plaintiff's pain and disability constituted a substantial contributing factor to plaintiff's depression and anxiety. Dr. Schroeder was of the opinion that plaintiff needed ongoing psychological counseling.
7. Based upon the deposition testimony of Dr. Cutting and Dr. Schroeder, defendant authorized counseling with a psychologist of Dr. Schroeder's choosing, with the understanding that a treatment plan would be considered for the purpose of establishing parameters for duration and frequency of treatment. Industrial Commission nurse Judith Clouse made the formal recommendation for psychological counseling with a "time-specific" control designed to limit the counseling to a specific time period.
8. Plaintiff was hospitalized at Grace Hospital on March 21, 2000, after plaintiff was admitted for compromised respiratory function subsequent to an overdose of medication. Plaintiff was initially treated by a cardiologist, Dr. Paul Kirkman, during this period of hospitalization. Dr. Kirkman testified, and his discharge diagnosis was, that plaintiff's hospitalization was not due to a heart attack but was the result of an overdose of medication. Defendants alleged that plaintiff's overdose of medication was, in fact, a suicide attempt. Dr. Schroeder, plaintiff's psychiatrist, consulted plaintiff during this hospitalization and performed a complete evaluation as to whether plaintiff had taken a complete overdose. Dr. Schroeder found the overdose to be accidental, and believed plaintiff has suffered a complication of his recent *Page 5 
switch to methadone. Dr. Schroeder indicated that methadone had a long half-life and that it had a "sneaky" effect, in that it can build up in the patient's system until a level was rather high.
The notes of Dr. Nagy, who treated plaintiff during his period of admission at Grace Hospital, indicate that he concurred in Dr. Schroeder's finding that plaintiff had taken an accidental overdose. Based on the testimony of Dr. Schroeder, and the medical evidence of record, the Full Commission finds that the plaintiff's hospitalization in March 2000 for medication overdose was not a suicide attempt and was, in fact, an accidental overdose.
9. Defendants have relied on the testimony of psychiatrist Dr. Robert Barth in asserting that plaintiff's mental condition is not related to the November 1, 1993, injury by accident and resulting surgeries. Dr. Barth never examined plaintiff, and provided merely a review of plaintiff's medical records. Dr. Barth testified that he did not believe plaintiff's mental condition was causally related to the injury by accident, stating he believed it was attributable to pre-existing psychological problems, but did admit that "perfectly normal depression can develop in response to pain." The Full Commission gives greater weight to the opinions of plaintiff's treating mental health providers, Dr. Schroeder and Dr. Cutting, as opposed to Dr. Barth, because Dr. Barth never examined plaintiff and based his opinions on his knowledge of scientific research and a cold review of the plaintiff's medical record.
10. Defendants also rely on a report by Dr. Terrence Fitzgerald in asserting that plaintiff's mental condition is not related to the November 1, 1993. The Full Commission gives little weight to Dr. Fitzgerald, as he was not plaintiff's treating physician, and was not deposed in this matter. Without the benefit of cross-examination, his opinions fall short of those proffered by the other capable and credible expert witnesses in this matter. *Page 6 
11. Based on a review of the medical record, including the testimony of Dr. Schroeder, plaintiff's treating psychiatrist, and Dr. Cutting, plaintiff's treating psychologist, the Full Commission finds that plaintiff's mental conditions, including depression and anxiety, were causally related to the November 1, 1993, injury by accident. The Full Commission finds that plaintiff would have benefited from medical treatment for his compensable mental conditions. Though plaintiff is deceased, the Commission finds the payment of his mental health care treatments by defendants to be reasonable. Further, the Full Commission finds that the plaintiff's hospitalization in March 2000 was caused by an overdose of psychiatric medication and, thus, is proximately related to plaintiff's medical condition resulting from the November 1, 1993, injury by accident.
12. Plaintiff has requested medical treatment for periodic falls experienced by the patient. Though Dr. Schroeder did confirm in his notes that plaintiff reported trouble walking, and that such problems can be attributable to medication, the Full Commission finds that his testimony alone is insufficient to establish the specificity of such falls, or that such falls were the consequence of psychiatric medication as opposed to any other idiopathic condition.
13. Plaintiff has requested an award of attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1. The Full Commission finds that defendants, in refusing to provide mental health care for plaintiff, brought this claim without reasonable ground, which warrants appropriate fees per N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW *Page 7 
1. Plaintiff sustained a compensable injury by accident on November 1, 1993, which proximately resulted in the development of mental conditions, including depression and anxiety. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff has failed to show that his periodic falls were the consequence of psychiatric medication as opposed to any other idiopathic condition. N.C. Gen. Stat. § 97-2(6).
3. Plaintiff was entitled to medical treatment that was necessary to effect a cure, give relief, or lessen the period of plaintiff's compensable mental conditions, including, but not limited to treatment provided by Dr. Cutting and Dr. Schroeder, and plaintiff's hospitalization for an accidental overdose of medication in March 2000. N.C. Gen. Stat. § § 97-2(19) and 97-25.
4. Plaintiff has requested an award of attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1. The Full Commission finds that defendants, in refusing to provide mental health care for plaintiff, brought this claim without reasonable ground, which warrants appropriate fees per N.C. Gen. Stat. § 97-88.1. "When an insurance carrier is responsible for attorneys' fees pursuant to N.C. Gen. Stat. § 97-88.1, the trial court may award attorneys an amount based on a percentage of the medical compensation recovered . . . ." Palmer v. Jackson, 157 N.C.App. 625,637, 579 S.E.2d 901, 909 (2003).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay for medical treatment provided to plaintiff that was necessary to effect a cure, give relief, or lessen the period of plaintiff's compensable mental *Page 8 
conditions, including, but not limited to treatment provided by Dr. Cutting and Dr. Schroeder, and plaintiff's hospitalization for an accidental overdose of medication in March 2000.
2. Defendants shall pay a reasonable attorney's fee to plaintiff's counsel, per N.C. Gen. Stat. § 97-88.1, in the amount of twenty-five percent (25%) of the medical compensation awarded herein. This fee shall not be deducted from medical compensation that is due and payable to plaintiff's medical providers, but shall be assessed as a cost to defendants.
3. Defendants shall pay the costs of this action.
This 29th day of January 2007.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 1